# IN THE COURT OF APPEALS OF IOWA

No. 18-0247
Filed October 10, 2018

**IN THE MATTER OF M.B.,**
**Alleged to be Seriously Mentally Impaired,**

**M.B.,**
　　　Respondent-Appellant.
_____

　　　Appeal from the Iowa District Court for Polk County, Eliza J. Ovrom, Judge.


　　　Respondent appeals the district court decision finding him to be seriously mentally impaired.  **AFFIRMED.**



　　　Alexander D. Smith of Parrish Kruidenier Dunn Boles Gribble Gentry Brown & Bergmann, LLP, Des Moines, for appellant.

　　　Thomas J. Miller, Attorney General, and Gretchen Witte Kraemer, Special Assistant Attorney General, for appellee State.



　　　Considered by Potterfield, P.J., and Bower and McDonald, JJ.

**BOWER, Judge.**

M.B. appeals the district court decision finding him to be seriously mentally impaired. We find there is sufficient evidence in the record to show M.B. lacks sufficient judgment to make responsible decisions with respect to his treatment and is likely, if allowed to remain at liberty, to inflict physical injury on himself or others. We affirm the decision of the district court.

## I. Background Facts & Proceedings

M.B. has been diagnosed with and treated for schizophrenia. He was in a mental health program in the community. In late 2017, M.B. began refusing to take his prescribed medication for his schizophrenia and his condition deteriorated. On November 29, 2017, M.B. was outside his apartment yelling and screaming at his neighbors, and police officers were called to the scene. He was later served with a notice of eviction due to the incident. M.B. refused assistance from his caseworker and case manager, who filed affidavits alleging M.B. was seriously mentally impaired and stating he was likely to harm himself or others when he was not taking his medication.

In December 2017, a physician's report of examination by Dr. Ketan Dhadphale found M.B. was mentally ill and unable to make responsible decisions about his treatment due to impaired insight and judgment. Dr. Dhadphale reported M.B. was likely to injure himself or others, noting as recent overt acts "yelling at neighbors, previous history of aggressive behaviors."

M.B. asked for a continuance and remained in treatment. Dr. Ahmar Butt examined M.B. in January 2018 and found M.B. could not make responsible decisions about treatment, stating, "Pt has symptoms of psychosis/delusions, has

poor insight/judgment, has been noncompliant with meds." Dr. Butt stated M.B. was likely to injure himself or others based on the recent overt acts of "Psychosis, command hallucinations." The report also stated M.B. was a "Potential danger to self/others due to loss of touch with reality."

After a hearing, a magistrate found M.B. was seriously mentally impaired. The magistrate noted M.B.'s "uncontrolled demeanor at trial" and his statements he was hearing both God and the devil. The magistrate found, "Inpatient treatment is the only safe setting for [M.B.] to deal with his paranoia and psychotic behavior." M.B. appealed the magistrate's decision to the district court.

A hearing was held in the district court on January 11, 2018. Dr. Butt testified M.B. had schizophrenia and had symptoms of psychosis. M.B. told Dr. Butt he heard voices telling "him positive things to do." Dr. Butt testified,

> So I want to emphasize that the command hallucinations, when the voices tell people to do things, they could be dangerous per se. Because the voices tell people to do things, and it's very— sometimes it's very hard to resist to the voice's command and people put themselves in danger.
> So I believe he is hearing command hallucinations, and he has delusional beliefs. That's why I believe he does not have [the] capacity to make medical decisions.

Dr. Butt stated M.B. was likely to physically injure himself or others if allowed to remain in the community because he "got agitated, irritable. Got angry." He also noted M.B.'s delusional beliefs. M.B. told Dr. Butt, "Doctor, you die. I hope you die. And you should not lie down, Coward." Dr. Butt also stated M.B. was a danger to himself because he was not taking his medications. He stated M.B. needed to stay in inpatient treatment until his symptoms were managed to an extent he could be released to outpatient treatment.

M.B. testified he did not believe he needed any medication. When asked if he had ever been physically aggressive, M.B. stated, "No, never aggressive; always on defense. Has been a defensive thing. And it's only been one time in my life and then another time when I was in Polk County jail, but I didn't hurt the deputy." M.B. testified his statement to Dr. Butt about dying was made "really on a friendly basis."

The district court ruled M.B. was seriously mentally impaired. In determining M.B. lacked judgmental capacity, the court found, "Lacks judgment concerning treatment. Voices telling him what to do. Does not believe he needs psychiatric treatment or medication." The court found M.B.'s condition was treatable. On the issue of dangerousness, the court stated:

> Danger to self due to delusions and hearing voices. Likely to injure others. Came to treatment because agitated with others; upset and irritable. History of aggression in past. Told doctor today he hoped he would die. Not able to care for his own medical care if discharged. Would not take prescribed medications. Likely to suffer physical injury, physical debilitation or death within reasonably foreseeable future. Threatened with eviction due to actions when off meds.

The court concluded M.B. should be committed for a complete psychiatric evaluation and appropriate treatment. M.B. appeals the decision of the district court.

## II. Standard of Review

Challenges to the sufficiency of the evidence in involuntary commitment proceedings are reviewed for the correction of errors at law. *In re B.B.,* 826 N.W.2d 425, 428 (Iowa 2013). An allegation of serious mental impairment must be proven by clear and convincing evidence. Iowa Code § 229.13(1) (2017). "Clear and

convincing evidence is less burdensome than evidence establishing proof beyond a reasonable doubt, but more burdensome than a preponderance of the evidence." *B.B.,* 826 N.W.2d at 428. "It means that there must be no serious or substantial doubt about the correctness of a particular conclusion drawn from the evidence." *Id.*

While the elements of serious mental impairment must be established by clear and convincing evidence, the district court's factual findings are binding on appeal if they are supported by substantial evidence. *In re J.P.,* 574 N.W.2d 340, 342 (Iowa 1998). "Evidence is substantial if a reasonable trier of fact could conclude the findings were established by clear and convincing evidence." *Id.*

### III. Merits

In order to be considered seriously mentally impaired under section 229.1(20), there must be clear and convincing evidence the respondent (1) has a mental illness; (2) lacks "sufficient judgment to make responsible decisions with respect to the person's hospitalization or treatment"; and (3) is likely, if allowed to remain at liberty, to inflict physical injury on "the person's self or others," to inflict serious emotional injury on those close to the person, or to be unable to satisfy the person's physical needs. *Id.* at 343 (quoting *In re Foster,* 426 N.W.2d 374, 376–77 (Iowa 1988)).

**A.** M.B. does not dispute the first element, that he has a mental illness. He claims there is not sufficient evidence in the record to support the court's finding on the second element, whether he lacked sufficient judgment to make responsible decisions about his treatment. To demonstrate lack of judgmental capacity the State must prove "the person is unable because of the alleged mental illness, to

make a rational decision about treatment, whether the decision is to seek treatment or not." *In re L.H.*, 890 N.W.2d 333, 340 (Iowa Ct. App. 2016) (quoting *In re B.T.G.*, 784 N.W.2d 792, 797 (Iowa Ct. App. 2010)).

M.B. claims he had a rational reason to refuse to take medication—he was worried about the side effects. At the hearing, M.B. testified about potential side effects, but he also testified he did not believe he needed medication. Dr. Butt testified M.B. was prescribed medication for his mental illness but had been refusing to take the medication. He stated M.B.'s prescribed medication could have side effects, which "could be anything from very minor thing that could affect stomach upset to very serious thing that could be life-threatening." Dr. Butt also stated if M.B. was discharged without medications he would remain psychotic and "may put himself and other people in danger."

We find there is substantial evidence in the record to support the district court's finding M.B. lacked sufficient judgment to make responsible decisions about his medical treatment.

**B.** M.B. also claims there was not sufficient evidence to show he was likely, if allowed to remain at liberty, to inflict physical injury on himself or others, to inflict serious emotional injury on those close to him, or to be unable to satisfy his physical needs. *See J.P.*, 574 N.W.2d at 343. The term "likely" means "probable or reasonably to be expected." *B.B.*, 826 N.W.2d at 433. The element of dangerousness "requires a predictive judgment, 'based on prior manifestations but nevertheless ultimately grounded on future rather than past danger.'" *Id.* (quoting *In re Oseing*, 296 N.W.2d 797, 801 (Iowa 1980)). Additionally, "[t]his element requires that the threat the patient poses to himself or others be evidenced

by a 'recent overt act, attempt, or threat.'" *Id.* (quoting *In re Mohr*, 383 N.W.2d 539, 542 (Iowa 1986)).

Dr. Butt testified M.B. was likely to injure himself or others if he remained in the community without treatment. He stated without medication M.B. had delusional beliefs and got agitated, irritable, and angry. M.B. had previous issues with aggression, at one point putting a police officer in a wrestling hold. When asked, "How certain are you that some harm will befall him or others because of mental illness," Dr. Butt responded:

> I am very certain because he has aggression in the past. He is here because of irritability and noncompliance with medication. And he currently has symptoms. And he has potential for agitation and aggression because he had in the past. So it is a likelihood that he could be a potential danger.

We additionally find M.B. had engaged in recent overt acts. On the day of the hearing, M.B. told Dr. Butt, "Doctor, you die. I hope you die." Also, M.B. had been yelling and screaming at his neighbors, causing him to be evicted from his apartment.

We conclude there is sufficient evidence in the record to show M.B. was likely to be a danger to himself or others if allowed to remain at liberty.

We affirm the decision of the district court.

**AFFIRMED.**